IN RE: INQUIRY CONCERNING A JUDGE, NO. 154, JOHN S. HAIR, JR., RESPONDENT

No. 231A93

(Filed 5 November 1993)

**Judges, Justices, and Magistrates § 36 (NCI4th) — censure of district court judge**

A district court judge is censured for conduct prejudicial to the administration of justice that brings the judicial office

## IN RE HAIR

[335 N.C. 150 (1993)]

into disrepute for comments which could reasonably be interpreted as threats of professional reprisal against members of the district attorney's office and an attorney practicing in the district court for what the judge perceived to be disloyalty to and a betrayal of him in his divorce case.

**Am Jur 2d, Judges § 19.**

This matter is before the Court upon a recommendation by the Judicial Standards Commission, filed with the Court on 8 June 1993, that Judge John S. Hair, Jr., a Judge of the General Court of Justice, District Court Division, Twelfth Judicial District of the State of North Carolina, be censured for conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Calendared in the Supreme Court 14 October 1993.

*No counsel for the Judicial Standards Commission or for the respondent.*

PER CURIAM.

The Judicial Standards Commission (Commission) notified Judge John S. Hair, Jr., on 7 August 1991 that it had ordered a preliminary investigation to make inquiry concerning alleged misconduct of the respondent. The subject matter of the investigation included allegations that during the course of his divorce proceedings, the respondent had *ex parte* contact with a judge in which he questioned the fairness of the judge's decision and attempted to exert pressure on him, resulting in his withdrawal from respondent's case; threatened members of the staff of the district attorney's office, his ex-wife's attorneys, and other attorneys with professional reprisal for their involvement in his case; and presided over cases in which his attorney or members of his attorney's law firm represented parties while respondent's divorce case was pending.

Special Counsel for the Commission filed a complaint on 18 March 1992. Respondent answered, admitting some of the allegations and denying others. He stated that the personal distress related to his divorce led to his conduct which, in retrospect, he understands could have created the appearance of impropriety. Respondent stated that he did not feel he had willfully engaged in misconduct or conduct prejudicial to the administration of justice and asked that the Commission accept his present understanding as to these matters and issue a decision consistent therewith.

**IN RE HAIR**

[335 N.C. 150 (1993)]

On 27 January 1993, respondent was served with an Amended Notice of Formal Hearing concerning the charges alleged against him. On 21 April 1993, respondent was accorded a plenary hearing before seven members of the Commission on the charges contained in the complaint. The Commission's evidence was presented by William N. Farrell, Jr., Senior Deputy Attorney General, and respondent was represented by his counsel, Joseph B. Cheshire, V, and Alan Schneider. After hearing the evidence, the Commission concluded on the basis of clear and convincing evidence that respondent's conduct constituted, *inter alia*, violations of Canons 1, 2A, and 3A(3) of the North Carolina Code of Judicial Conduct and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The findings upon which the Commission based these conclusions are contained in paragraphs 9 and 10 of its Recommendation. Paragraph 9 is as follows:

9. The respondent is the defendant in *Hair v. Hair*, Cumberland County file number 88 CVD 4591, which has been an emotional, volatile, and contentious divorce proceeding since its inception. On the following two occasions the respondent made hostile and unprovoked comments unbecoming to his judicial office which a reasonable person or objective observer could interpret to constitute threats of professional reprisal against the individuals to whom the comments were directed for what the respondent perceived to be these individuals' disloyalty to and betrayal of him in connection with his divorce case.

a. After a hearing in the *Hair* case concluded on May 10, 1990, with a consent judgment, the respondent was walking down the hallway leading to the offices of Twelfth Prosecutorial District Attorney Edward W. Grannis, Jr., when Mr. Grannis called out to the respondent from his office where he was seated along with his administrative assistant Anne Hatch, assistant district attorney John Dickson, and SBI agent Marshall Evans. In response to Mr. Grannis' inquiry about the status of the respondent's hearing, the respondent entered Mr. Grannis' office. Before anyone else present had said a word, the respondent addressed Ms. Hatch and Mr. Dickson, who had been on standby status to testify as witnesses for the respondent, and stated to them in an angry, trembling voice while pointing his finger in their direction that he did not appreciate their not testifying which he considered disloyal. Further, when Ms.

IN RE HAIR

[335 N.C. 150 (1993)]

Hatch tried without success to explain that she and Mr. Dickson were on standby status but were not called to testify, the respondent reminded Mr. Grannis that: 1) the respondent wore a black robe, 2) members of Mr. Grannis' staff had to appear before him, and 3) the respondent would remember that staff members Hatch and Dickson had not testified for him. Ms. Hatch, upset by the respondent's attack on her and his failure to give her an opportunity to explain, replied to the respondent's verbal tirade by telling him he could take his subpoena and "shove it."

b. In the winter of 1989 the respondent was presiding over a session of court at which attorney Robert Stiehl had cases calendared. As soon as Mr. Stiehl entered the courtroom, the respondent stopped court, stated to Mr. Stiehl that he wanted to see him, and instructed Mr. Stiehl to accompany the respondent to the judge's chambers adjacent to the courtroom. Upon the two entering the judge's chambers, the respondent slammed the door and in a very angry tone of voice and with an obviously flushed face demanded to know if a Wanda Kane worked for Mr. Stiehl's law firm. Ms. Kane had in fact notarized a document for Barbara Hair, the respondent's ex-wife, so it could be filed in the *Hair* case after Mr. Stiehl had offered Ms. Kane's services to Ms. Hair for that purpose only. When Mr. Stiehl confirmed that Ms. Kane did work for Stiehl's law firm, the respondent told Mr. Stiehl, "I appreciate the hell out of your law firm helping my wife with her domestic matter." The respondent went on to explain that he had received a document with Ms. Kane's name on it and reiterated his displeasure and lack of regard for Mr. Stiehl or the people in Mr. Stiehl's law firm for providing assistance to his wife in their domestic matter. In light of the respondent's language, tone of voice, and excitable state, Mr. Stiehl decided it would not be prudent for him to appear before the respondent and that his clients would be penalized by the respondent if Mr. Stiehl did so. Consequently, Mr. Stiehl did not return to the respondent's courtroom that day or for a number of weeks thereafter.

Based upon these and other findings of fact and conclusions of law, the Commission recommended that the Supreme Court of North Carolina censure the respondent. On 9 June 1993, pursuant to Rule 2(a) of the Rules Governing Supreme Court Review of

**IN RE HAIR**

[335 N.C. 150 (1993)]

Recommendations of the Judicial Standards Commission, the Clerk of this Court forwarded to the respondent and his counsel a certified true copy of the Findings of Fact, Conclusions of Law, and Recommendations of the Judicial Standards Commission, together with a copy of the Rules Governing Supreme Court Review of Recommendations of the Judicial Standards Commission. Respondent was also advised, as provided in Rule 2(b), that he had ten (10) days from the date shown on the return receipt in which to petition the Supreme Court for a hearing. The return receipt, properly filed with this Court, shows a delivery date of 11 June 1993. No petition having been filed with this Court for a hearing, and no briefs having been filed in this case by any party, an order was entered by this Court on 27 August 1993 that this case be disposed of on the record.

> · · A proceeding before the Judicial Standards Commission is "an inquiry into the conduct of one exercising judicial power . . . . Its aim is not to punish the individual but to maintain the honor and dignity of the judiciary and the proper administration of justice." *In Re Nowell*, 293 N.C. 235, 241, 237 S.E.2d 246, 250 (1977). The recommendations of the Commission are not binding upon the Supreme Court, and this Court must consider all the evidence and exercise its independent judgment as to whether it should censure the respondent, remove him from office, or decline to do either. *In re Martin*, 295 N.C. 291, 301, 245 S.E.2d 766, 772 (1978).

*In re Bullock*, 328 N.C. 712, 717, 403 S.E.2d 264, 266 (1991).

We have carefully examined the evidence presented to the Commission. We conclude that the findings of fact in paragraph 9 of the recommendations are supported by clear and convincing evidence. *See In Re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983). We also agree with the Commission's conclusions of law as set out herein. We therefore adopt these findings and conclusions, and the Commission's recommendation of censure based on these findings and conclusions.

Now, therefore, it is ordered by the Supreme Court of North Carolina, in Conference, that the respondent, Judge John S. Hair, Jr., be, and he is hereby, censured by this Court for conduct prejudicial to the administration of justice that brings the judicial office into disrepute.