IN RE: INQUIRY CONCERNING A JUDGE, NO. 170, STAFFORD G. BULLOCK, RESPONDENT

No. 340A93

(Filed 17 June 1994)

**Judges, Justices, and Magistrates § 36 (NCI4th)— district court judge—hearing of motions after recusal—investigation of living arrangements—no conduct prejudicial to administration of justice—no willful misconduct in office**

A district court judge was not guilty of conduct prejudicial to the administration of justice or willful misconduct in office

IN RE BULLOCK

[336 N.C. 586 (1994)]

where the judge declared a mistrial and recused himself in a domestic relations case on the ground that he could not believe any testimony by the defendant and could not give defendant a fair and impartial hearing; the judge testified as a witness for the plaintiff in a hearing before another judge; and when motions in the case came on for hearing before the judge, he denied defendant's motion to recuse himself on the ground of judicial economy, set aside his previous order that he could not give defendant a fair trial, and heard the motions. Nor was the judge guilty of misconduct prejudicial to the administration of justice or willful misconduct in office when he investigated defendant's living arrangements to assist him in his determination of visitation with a minor child not represented by counsel.

**Am Jur 2d, Judges § 19.**

**Disqualification of judge on ground of being a witness in the case. 22 ALR3d 1198.**

This matter is before the Court upon a recommendation by the Judicial Standards Commission, entered 4 August 1993, that Judge Stafford G. Bullock, then a Judge of the General Court of Justice, District Court Division, Tenth Judicial District of the State of North Carolina, be censured for willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of Canons 2A, 3A(4), and 3C(1)(a) of the North Carolina Code of Judicial Conduct. Heard in the Supreme Court 15 March 1994.

*William N. Farrell, Jr., Senior Deputy Attorney General, Special Counsel for the Judicial Standards Commission.*

*Womble Carlyle Sandridge & Rice, by G. Eugene Boyce, for respondent-appellant.*

ORDER REJECTING CENSURE.

After reviewing the evidence adduced at the hearing before the Commission, this Court concludes that respondent's conduct that is in question may be described as follows.

On 14 December 1990, respondent presided over the domestic session of District Court, Wake County, where a hearing was conducted in the case *Itenson v. Itenson*, Wake County file number

90CVD6978. During the course of the hearing, respondent announced in open court that he was declaring a mistrial and recusing himself from the case. At that time, respondent stated that he recused himself because he could not believe any testimony from the defendant in the *Itenson* case, and that he could not give the defendant the fair and impartial hearing to which the defendant was entitled.

Respondent entered an order to that effect on 9 January 1991, stating in the order "[t]hat Defendant is entitled to a fair and impartial hearing and this Court has lost its impartiality because it cannot believe any statements made by the Defendant to this Court" and "[t]hat this Court cannot believe any testimony from the Defendant and shall declare a mistrial and must recuse itself from hearing this matter and any further matters between the parties." Respondent's order concluded that "the Court declares a mistrial on its own motion," and respondent "recuse[d] himself from hearing this matter and any other further matters between the parties."

On 18 December 1991, the *Itenson* case was again calendared for the hearing of new motions. Respondent was presiding over this domestic session of District Court, Wake County. When these motions came on for hearing, the defendant orally moved that respondent recuse himself. In support of his motion, the defendant reminded respondent that he had previously recused himself because of his inability to be fair and impartial to the defendant. The defendant also noted that respondent had himself testified as a witness for the plaintiff in the *Itenson* case in May of 1991 before Judge Joyce A. Hamilton.

Respondent denied the defendant's oral motion, and in his 24 February 1992 order, he found:

> That there exists an increasing number of cases in Wake County, like this one, that come on to be heard repeatedly and frequently. It may be more efficient if the same evidence and information need not be repeated for each judge hearing the matter. In an effort to improve judicial economy, certain frequently-heard cases should be heard by one judge on all matters. . . .
>
> . . . [I]n order to determine if this improves efficiency, the Chief District Court Judge will exercise exclusive jurisdiction over this case, . . . and all matters presented will be heard by the Chief District Court Judge, exclusively.

**IN RE BULLOCK**

[336 N.C. 586 (1994)]

Respondent concluded as a matter of law that defendant's motion to recuse should be denied and set aside his previous order. Pursuant to this resumption of jurisdiction over the *Itenson* case, respondent presided over the 18 December 1991 hearing, as well as subsequent hearings on 20 April 1992 and in October 1992.

Following the 20 April 1992 hearing in the *Itenson* case, respondent initiated inquiries concerning the content of an affidavit filed by the plaintiff in the case. The plaintiff filed the affidavit on 11 May 1992 and delivered it to respondent's chambers or office in his absence. Through this affidavit, the plaintiff asked the court to verify the defendant's representations at the 20 April 1992 hearing concerning his living arrangements, which were relevant to respondent's consideration of the issue of out-of-state child visitation. Respondent contacted Howard Cosier, the defendant's landlord, and also contacted the defendant, who had no knowledge of the affidavit until informed by respondent of its existence. As a result of these investigations, respondent gained knowledge of disputed evidentiary facts concerning the *Itenson* case. Subsequently, in a 2 June 1992 order, respondent found as fact that "[i]t has become obvious to the Court, after receiving an affidavit from the plaintiff and telephone conversation with the defendant and Howard J. Cosier, that the [defendant's] lease arrangement does not meet the Courts [sic] expectation."

For these actions, the Commission concluded as a matter of law that respondent's conduct constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The Commission recommends that respondent be censured by this Court.

When the recommendations of the Judicial Standards Commission are reviewed, "[i]ts recommendations are not binding upon the Supreme Court, which will consider the evidence of both sides and exercise its independent judgment as to whether it should censure, remove or decline to do either." *In re Nowell*, 293 N.C. 235, 244, 237 S.E.2d 246, 252 (1977).

After careful consideration, we conclude that respondent's conduct was not so egregious as to amount to conduct prejudicial to the administration of justice within the meaning of N.C.G.S. § 7A-376.

In so holding, we do not address the question of whether respondent violated specific provisions of the North Carolina Code of Judicial Conduct. Although helpful in understanding the statutory and constitutional prohibitions on judicial behavior, the question of whether a judge has violated codes of judicial conduct is not determinative of the central issue of whether his conduct was prejudicial to the administration of justice. *In the Matter of Edens*, 290 N.C. 299, 306, 226 S.E.2d 5, 9 (1976).

> Conduct prejudicial to the administration of justice that brings the judicial office into disrepute has been defined as "conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to public esteem for the judicial office."

*Id.* at 305, 226 S.E.2d at 9 (quoting *Geiler v. Commission on Judicial Qualifications*, 10 Cal. 3d 270, 284, 515 P.2d 1, 9, 110 Cal. Rptr. 201, 209 (1973), *cert. denied*, 417 U.S. 932, 41 L. Ed. 2d 235 (1974) ). In the present case, the defendant in the *Itenson* case made an oral motion that respondent recuse himself, which was denied in open court. Respondent supported the denial of the motion with a written order filed several weeks after the denial of the motion, citing, *inter alia*, considerations of judicial economy as the reasons for the denial of the motion. This order also set aside respondent's previous order in which he stated that he would be unable to grant the defendant a fair and impartial trial.

Without addressing the question of whether respondent should have recused himself, we hold that respondent's conduct associated with these rulings and the manner in which they were conducted were not such that they would be, to an objective observer, prejudicial to the public esteem of the judicial office.

The same can be said for respondent's investigation of the defendant's lease arrangements. The record indicates that respondent's purpose in communicating with the defendant and his landlord was to assist him in his determinations on the question of visitation arrangements concerning a minor child not represented by counsel. Again, we reach no conclusion with regard to whether his actions were well advised or constituted a violation of the Code of Judicial Conduct. We simply hold that these actions do not rise to the level of those instances of conduct that we have previously determined to be prejudicial to the administration of justice. *See,*

IN RE BULLOCK

[336 N.C. 586 (1994)]

*e.g., In re Cornelius*, 335 N.C. 198, 436 S.E.2d 836 (1993) (giving legal advice to an individual with regard to her discharge from employment, intervening on her behalf, and conveying the impression that the discharged individual had special influence with the judge); *In re Hair*, 335 N.C. 150, 436 S.E.2d 128 (1993) (comments that could reasonably be interpreted as threats of professional reprisal against members of the district attorney's office and an attorney practicing before the district court); *In re Hair*, 324 N.C. 324, 377 S.E.2d 749 (1989) (multiple instances of misconduct, including an inappropriate advance upon a female detective, making what could be construed as threats to attorneys, and changing verdicts upon *ex parte* communications with defendants); *In re Crutchfield*, 289 N.C. 597, 223 S.E.2d 822 (1975) (signing judgments granting limited driving privileges upon *ex parte* communications with counsel without giving the State an opportunity to be heard).

Having held that respondent's conduct was not prejudicial to the administration of justice, we further hold that respondent's actions do not amount to willful misconduct in office. "Wilful misconduct in office of necessity is *conduct prejudicial to the administration of justice that brings the judicial office into disrepute.*" *Nowell*, 293 N.C. at 248, 237 S.E.2d at 255.

Now, therefore, pursuant to N.C.G.S. § 7A-376, § 7A-377(a), and Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission, it is ordered that the recommendation of the Commission that Judge Stafford G. Bullock be censured be and it is hereby rejected.

Chief Justice Exum did not participate in the consideration or decision of this matter.

By order of the Court in conference this the 17th day of June, 1994.

Parker, J.

For the Court

WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 17th day of June 1994.

CHRISTIE SPEIR CAMERON
Clerk of the Supreme Court

Marvea J. Francis
Assistant Clerk