IN RE: INQUIRY CONCERNING A JUDGE NO. 64, BILL J. MARTIN

No. 26

(Filed 4 March 1981)

**1. Judges § 7— preliminary investigation by Judicial Standards Commission — right of respondent to present evidence**

There was no merit to the contention of a district court judge that the Judicial Standards Commission did not afford him a reasonable opportunity to present such relevant matters as he might choose during a preliminary investigation, since both notices advising respondent of the preliminary investigation specifically stated that he had the right to present any relevant matters he might choose; respondent's letter to the Commission did not embody a request to present relevant matters during the investigation; even if respondent's letter did amount to such a request, any failure by the Commission to allow respondent to present relevant matters would not render the entire proceeding a nullity; and respondent failed to show what, if any, prejudice resulted from the alleged failure to afford him the opportunity to present relevant matters.

**2. Judges § 7— proceedings before Judicial Standards Commission — State Bar attorney appointed as special counsel**

The Judicial Standards Commission was authorized to appoint an attorney who was a full time employee of the North Carolina State Bar as special counsel in a proceeding to investigate alleged misconduct by a district court judge.

**3. Judges § 7— misconduct in office — censure — sufficiency of evidence**

Evidence was sufficient to support the conclusion of the Judicial Standards Commission that respondent's conduct constituted conduct prejudicial to the administration of justice that brings the judicial office into disrepute and the evidence was sufficient to support its recommendation of censure where it tended to show that respondent was charged with failure to stop at a stop sign; he was to appear in district court at a session over which he was scheduled to preside; he knew that it would be improper to preside over that session; he said nothing when his case was called; he did not offer to recuse himself; and the assistant district attorney, upon learning that respondent was the defendant, took a voluntary dismissal in the case.

**4. Judges § 7— misconduct in office — judge's behavior toward female criminal defendants**

Evidence was sufficient to support findings by the Judicial Standards

Commission concerning respondent's behavior toward and with two female criminal defendants who had appeared before him where the evidence tended to show that respondent followed one defendant in his automobile, indicated that he wanted defendant to get into his car, discussed the pending criminal cases against her, and indicated his willingness to appoint an attorney for her in exchange for sexual favors; respondent subsequently met this same defendant in a parking lot to discuss her situation, and during the course of the conversation made improper advances; respondent went uninvited to the home of the second defendant and there attempted to force himself upon the defendant; and the times, places, and bare bones of the meetings with the criminal defendants were supported by the testimony of respondent who contended that the Supreme Court should believe his version of the events and discount the version related by the female defendants and found as true by the Commission.

### 5. Judges § 7— wilful misconduct in office

There was no merit to respondent's contention that his conduct did not amount to wilful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute because there was no evidence that he intentionally used the *power of his office* to accomplish the acts of which he stood accused, since (1) the inquiry was not whether the conduct in question could fairly be characterized as "private" or "public," but the proper focus was on, among other things, the nature and type of conduct, the frequency of occurrences, the impact which knowledge of the conduct would likely have on the prevailing attitudes of the community, and whether the judge acted knowingly or with a reckless disregard for the high standards of the judicial office, and respondent's attempt on several occasions to obtain by innuendoes or directly sexual favors from two female defendants constituted wilful misconduct in office warranting removal; (2) the record was not silent on the question of whether respondent actually offered or extended judicial leniency in return for sexual favors; (3) in light of the Supreme Court's previous censure of respondent, and his persistence in following a course of conduct detrimental to the judicial office as evidenced in the present case, respondent abused the privilege of his office, was guilty of wilful misconduct in office, and should be officially removed from office.

### 6. Judges § 7— proceedings before Judicial Standards Commission — conduct during previous term considered

There was no merit to respondent's contention that the Judicial Standards Commission erred in considering evidence concerning his conduct with a female criminal defendant who appeared before him because that conduct occurred in a previous term of office.

THIS proceeding is before the Court upon the recommendation of the Judicial Standards Commission (hereinafter referred to as the "Commission") that Respondent Bill J. Martin be removed from office and censured as provided in G.S. 7A-376 (1979 Cum. Supp.).

On 18 December 1979 and 12 February 1980, the Judicial Standards Commission, in accordance with its Rule 7, notified Respondent that it had ordered on its own motion a preliminary

In re Martin

investigation to determine whether formal proceedings should be instituted against him under the Commission's Rule 8. The December notice informed Respondent that the "subject matter of the preliminary investigation will be your actions in *State v. Bill Joe Martin*, Catawby County file number 79CR15048." The February notice stated that the subject matter of the preliminary investigation would include:

a) your relationship and conduct in connection with female criminal defendants, witnesses, and other persons having an interest in matters pending or heard before you;

b) your entry of an order following a hearing in a domestic relations matter allegedly without notice to the opposing party or counsel for the opposing party;[1] and

c) your refusal to proceed with the trial of juvenile matters on grounds that the State was not represented when in fact the State was represented and prepared to proceed.[2]

Both notices included the following:

You have the right to present for the Commission's consideration any relevant matters you choose. An investigator for the Commission, Mr. Cale K. Burgess, may contact you in the future.

On 1 May 1980, Judge Martin was served with a formal complaint and notice which informed him, *inter alia*, that the Commission had "concluded that formal proceedings should be instituted" against him; that Harold D. Coley, Jr., would be Special Counsel for the formal proceedings; and that the charges against him were wilful misconduct in office and conduct prejudicial to the adminis-

---

[1] The conduct charged in (b) was, in fact, the subject matter of another investigation instituted by the Commission, culminating in our censure of him in *In re Martin*, 295 N.C. 291, 245 S.E. 2d 766 (1978). The complaint filed in the instant proceeding contained no allegation relating to this conduct.

[2] At the hearing, counsel for the Commission indicated that it would present no evidence in support of allegation (c) which was embodied in Count 5 of the complaint. Judge Clark allowed Respondent's motion at the close of the Commission's evidence for a directed verdict on this count.

tration of justice that brings the judicial office into disrepute.

Respondent answered, denying the material allegations and explaining his own recollection of the events.

A formal hearing was scheduled to begin on 29 July 1980. On that date, Respondent moved that he be allowed, pursuant to Rule 7 of the Judicial Standards Commission, a reasonable opportunity to present such relevant matters as he should choose. By order dated 1 August 1980, Respondent's motion was allowed. The hearing was rescheduled to begin on 16 September 1980 in the Federal Court-house in Statesville, North Carolina.

Evidence in support of the allegations in the complaint was presented at the hearing by Mr. Harold D. Coley, Jr., Special Counsel for the Commission. Respondent was present and offered evidence. He was represented at the hearing by Mr. John A. Hall and Mr. William C. Warden, Jr.

After hearing the evidence, the Commission made findings of fact and conclusions of law and recommendations regarding the conduct of Respondent. The findings of fact upon which it based its final conclusions and recommendations are as follows:

(a) That from 30 October 1979 to and including 14 January 1980 there were pending against then twenty-one-year-old Debbie W. Lail the four (4) worthless check cases of *State of North Carolina v. Debbie W. Lail,* Catawba County file numbers 79Cr12854, 79Cr12855, 79Cr15200, and 79Cr15748; that the respondent presided over the 30 October 1979 Criminal Session of Catawba County District Court at Hickory, North Carolina, and directed that the four pending cases be added to the printed calendar for that session; that the respondent had previously authorized the defendant's release on her own recognizance from Catawba County jail on 28 October 1979 on condition that she appear in his courtroom; that the defendant did appear in court on 30 October 1979 and asked that an attorney be assigned to represent her, but no appointment was made at that time; that during the lunch recess of court, the respondent in his car followed the car operated by Ms. Lail and initiated a discussion with her concerning assignment of counsel after she had parked her car in a church parking lot at his signal and

gotten into respondent's car at his request; that the respondent stated he would consider appointing an attorney to represent her; that when Ms. Lail told the respondent she would appreciate appointed counsel, he grinned and asked, "How much do you appreciate it?"; that Ms. Lail repeated her statement that she would appreciate it, left the respondent's car, and drove away; that respondent ordered the assignment of counsel for defendant late in the day and then followed the defendant to the vicinity of her home after court adjourned; that the respondent also presided over the 19 November 1979 and 28 December 1979 Criminal Sessions of Catawba County District Court at Hickory at which the defendant's cases were calendared; that following the defendant's 5 January 1980 arrest for failure to appear in court on 28 December 1979, the respondent directed that the $1,000 bond amount set by Judge L. Oliver Noble on 7 January 1980 and required for her release be reduced to $500 and solicited the assistance of a bail bondsman to effect her release from Catawba County jail on 10 January 1980; that on 14 January 1980 the respondent met the defendant at his suggestion in the "Big Rebel" parking lot in Hickory, North Carolina, at night to discuss defendant's cases, and after Ms. Lail had gotten into the respondent's car at his request, the respondent attempted to force himself on the defendant during this meeting by attempting to embrace and kiss her but she resisted; that the respondent then suggested that they go to his office in the courthouse at Hickory but she refused, and before Ms. Lail left the respondent's car, the respondent asked for and obtained the defendant's phone number and said he would call her.

(b) That the respondent presided over the 22 February 1977 Criminal Session of Burke County District Court during which Carol Lynn Birchfield, the then twenty-one-year-old defendant in *State of North Carolina v. Carol Turpin Birchfield*, Burke County file number 77CR195, was convicted upon a plea of guilty to driving under the influence of intoxicating liquor and was granted limited driving privileges by the respondent; that the respondent presided over the 14 March 1977

Domestic Relations Session of Burke County District Court at which contempt proceedings by Carol Lynn Birchfield against her ex-husband for failure to pay child support were to be heard and signed a consent judgment in the case after the parties had agreed to a $1,500 settlement prior to trial; that soon after 14 March 1977 the respondent had lunch with Douglas F. Powel[1], attorney for Carol Lynn Birchfield in the aforementioned matters, at Holly Farms Restaurant in Morganton, North Carolina, where Ms. Birchfield was working at the time, and the respondent stated to Ms. Birchfield that he wanted to see her and said that he could favorably change her limited driving privileges, but she refused to make a date with him; that on the same afternoon the respondent went to the home of Ms. Birchfield uninvited, and while there the respondent made sexual advances toward her by attempting to fondle her breasts and attempting to kiss her and pushed her down on a bed; that Ms. Birchfield resisted these advances, and as he was leaving, the respondent told Ms. Birchfield that he would return the next day and would not take "No" for an answer.

(c) That on or about 16 October 1979 the respondent was charged with failure to stop at a duly erected stop sign in the case of *State of North Carolina v. Bill Joe Martin*, Catawba County file number 79Cr15048, and was cited to appear in Catawba County District Court at Hickory, North Carolina, on 19 November 1979; that the respondent knew it would be improper for him to hear his own case; that the respondent knew prior to 19 November 1979 that he was scheduled to preside over the session of court at which his case was calendared; that the respondent retained Phillip R. Matthews, an attorney, to represent him in the matter; that at no time prior to 19 November 1979 did the respondent or his attorney request a continuance of the matter or move for a change in venue; that the respondent presided over the 19 November 1979 Criminal Session of Catawba County District Court at Hickory, North Carolina, with knowledge that his case was on the calendar; that when the respondent's case was called at the calendar call by Thomas Neil Hannah, the assistant district attorney prosecuting the docket on that

In re Martin

date, the respondent did not offer to recuse himself or indicate that his recusal would be required nor did respondent's counsel request a continuance to a later date; that respondent's counsel answered for the respondent at the call of the calendar and requested that the case be held open; that Hannah had no knowledge that the defendant in *State of North Carolina v. Bill Joe Martin* was in fact the respondent until he questioned Matthews about this during a recess; that Hannah was embarrassed when he learned the identity of the defendant in the *Martin* case and decided to take a voluntary dismissal in the case for several reasons, including the minor nature of the offense, the probability that a change of venue would be necessary, and the awkward position in which the prosecution would be placed by trial before the respondent or another judge of that judicial district; that when court reconvened, the respondent continued to preside, and Hannah called the case and in open court announced the entry of a voluntary dismissal in the *Martin* case before the respondent.

11. That in response to a question by the Commission concerning the THIRD DEFENSE of his Answer the respondent stated that he felt the allegations of the Complaint were the result of a personal vendetta against him by persons in the 25th judicial district; however, the respondent failed to present any evidence at the hearing in support of his allegations.

12. That the findings hereinbefore stated and the conclusions of law and recommendation which follow were concurred in by five (5) or more members of the Judicial Standards Commission.

The Commission then concluded as a matter of law that Respondent's conduct in failing to recuse himself in a case in which he was the defendant constituted "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." The Commission consequently recommended that respondent be censured by this Court. The Commission further concluded that Respondent's sexual advances toward two female defendants constituted a "willful abuse of the power and prestige of his judicial office" and "willful misconduct in office and conduct prejudicial to

the administration of justice that brings the judicial office into disrepute . . . ." For this conduct, the Commission recommended that Respondent be removed from judicial office. On 12 December 1980 Respondent petitioned this Court for a hearing on the Commission's findings and conclusions and recommendations.

*McElwee, Hall, McElwee & Cannon, by John E. Hall and William C. Warden, Jr., for Respondent.*

*H. D. Coley, Jr., and Andrew A. Vanore, Jr., for Judicial Standards Commission.*

BRANCH, Chief Justice.

[1] Respondent first contends that the Commission erred in failing to observe the clear mandate of the Commission's Rule 7(b) which provides in pertinent part that during a preliminary investigation an accused judge "shall be . . . afforded a reasonable opportunity to present such relevant matters as he may choose." Respondent argues here that although he received notice of the preliminary investigation, he was never afforded opportunity to present relevant matters to the Commission or its investigator. He therefore concludes that all proceedings subsequent to the preliminary investigation are void due to the Commission's failure to follow its own mandate. We disagree.

We note initially that both notices advising Respondent of the preliminary investigation specifically stated that he had "the right to present for the Commission's consideration any relevant matters [he might] choose." Respondent contends that by letter dated 25 February 1980, he requested that he be allowed the opportunity to present relevant matters during the preliminary investigation. That letter reads as follows:

*LETTER - FEBRUARY 25, 1980*

Judicial Standards Commission
P. O. Box 1122
Raleigh, North Carolina 27602

To the Chairman and the Members of the Judicial Standards Commission of the State of North Carolina:

This is to acknowledge receipt of your letter of February 12, 1980, received by the Honorable Bill J. Martin

In re Martin

and to advise the Commission that the undersigned represents Judge Martin with regard to this matter.

Pursuant to your invitation, we would appreciate your sending to us a copy of the Rules of the Judicial Standards Commission.

Judge Martin has asked that I advise the Judicial Standards Commission that he has not engaged in any type of conduct as a judge of the General Court of Justice of the State of North Carolina which has been either illegal, improper or contrary to decency. Please advise the investigator, Mr. Cale K. Burgess, to whom you refer in your letter that Judge Martin and I will be happy to discuss with him or any other person delegated by the Commission any subject matter which the Commission directs the investigator to discuss with Judge Martin and me.

Judge Martin has further requested that I advise the Commission that the subject matter of the preliminary investigation as referred to in your Paragraph Number 3 of your letter appears to be very vague and we would request that at some early time, if possible, that the Commission be more particular with what the names, dates and places and title of cases with regard to the investigation in order that Judge Martin and I might be prepared to discuss the matters with the investigator more intelligently and with as much dispatch as possible. Suffice it to say that Judge Martin has further directed that I advise the Commission that he welcomes your investigation and that we will cooperate with the Commission with regard thereto.

Sincerely yours,

McELWEE, HALL, McELWEE & CANNON
s/ John E. Hall  lc
John E. Hall

Our careful examination of the letter leads us to conclude that it does not embody a request to present relevant matters during the preliminary investigation. Furthermore, even if we could fairly construe the letter as such a request, we are of the opinion that the

Commission's failure to abide by the dictates of Rule 7 would not render the entire proceeding a nullity. In *McCartney v. Commission on Judicial Qualifications*, 12 Cal. 3d 512, 116 Cal. Rptr. 260, 526 P. 2d 268 (1974), the Supreme Court of California faced a challenge that the petitioner was denied due process by the Commission's failure to accord proper notice of a preliminary investigation. The challenge was based on Rule 904(b) of the California Rules of Court which provided that an accused judge be allowed a "reasonable opportunity in the course of the preliminary investigation to present such matters as he may choose." In denying the petitioner's challenge to the procedural irregularity, the court noted that the notice requirement "clearly affords to the judge more procedural protection than is constitutionally required . . . . [N]otice to the judge under investigation as to the nature of the complaints against him is not compelled as a matter of due process . . . [and] relief from the deleterious effect, if any, of the Commission's failure to follow rule 904(b) may be secured by petitioner only upon a showing of actual prejudice." *Id.* at 519, 116 Cal. Rptr. at 265, 526 P. 2d at 273.

In the instant case, we note that Respondent has failed to show what, if any, prejudice resulted from the alleged failure here to afford him the opportunity to present relevant matters. In fact, the record clearly discloses that upon his specific request at the scheduled 29 July 1980 hearing, the Commision continued the hearing and ordered that he "be allowed to present relevant information to the Judicial Standards Commission or its investigator prior to the formal hearing in this cause." We therefore hold that, even if Respondent's February 25 letter amounted to a request to present matters pursuant to Rule 7 and the Commission's failure to honor that request constituted a procedural irregularity, that procedural flaw standing alone does not negate the entire proceeding. Respondent's assignment of error relating to this issue is overruled.

**[2]** Respondent next contends that the Commission erred in appointing as Special Counsel Mr. Harold D. Coley, Jr., and in utilizing as investigators Mr. H. J. Harmon and Mr. James Beane. In support of this contention, Respondent relies upon the following statute:

> The Commission is authorized to employ an executive secretary to assist it in carrying out its duties. *For specific cases, the Commission may also employ special counsel or call upon the Attorney General to furnish counsel.*

> *For specific cases the Commission may also employ an*
> *investigator or call upon the Director of the State Bureau*
> *of Investigation to furnish an investigator.* While per-
> forming duties for the Commission such executive secre-
> tary, special counsel, or investigator shall have authority
> throughout the State to serve subpoenas or other process
> issued by the Commission in the same manner and with
> the same effect as an officer authorized to serve process of
> the General Court of Justice. [Emphasis added.]

Respondent maintains that the Commission violated this statute
since Mr. Coley and Mr. Harmon were full-time employees of the
North Carolina State Bar, and Mr. Beane was employed by the
State of North Carolina District Attorney's Office, 25th Judicial
District. Respondent thus argues that neither Special Counsel nor
the investigators were "employed" by the Commission. He further
submits that counsel was not supplied by the Attorney General and
that the investigators were not furnished by the State Bureau of
Investigation. Respondent argues strenuously that it is against
public policy to permit the State Bar and the District Attorney's
office for the 25th District to be the "watchdogs" of the judiciary.

Prior to the hearing before the Commission, Respondent
moved to suppress all evidence relating to any counts in which the
investigators were Harmon or Beane, or in which Special Counsel
was Mr. Coley. Judge Clark as Chairman of the Judicial Standards
Commission denied Respondent's motion and specifically ruled
that Mr. Cale Burgess was the sole investigator and "that the Com-
mission has not had anyone else conduct any investigation for it or
asked anyone to do so." Respondent offered no evidence to refute
this ruling. We therefore do not deem it necessary to address Res-
pondent's allegation as it relates to Mr. Harmon and Mr. Beane.

We turn then to Respondent's contention that the Commission
violated G.S. 7A-377(b) in appointing Mr. Coley as Special Counsel.
He argues that the Commission did not "employ" Mr. Coley, but
rather "borrowed" him from the State Bar. Respondent's argument
presumes that the Legislature intended the word "employ" to mean
"hire" in its narrowest sense. The Commission on the other hand
argues that the word "employ" means to make use of or to use and
thus it had the authority to utilize Mr. Coley as Special Counsel.

The Judicial Standards Commission is a creature of the Legis-

lature and derives its powers solely from that source. G.S. 7A-377(a) specifically authorizes the Commission to "issue process to compel the attendance of witnesses and the production of evidence, to administer oaths, to punish for contempt, and to prescribe its own rules of procedure." Subsection (b) of that section further authorizes the Commission to "employ special counsel." In our opinion the Legislature intended to confer upon the Commission the powers necessary to effectively carry out its responsibilities under the statute. With this in mind we construe the word "employ" in its common, everyday sense to mean "use" or "make use of." *Webster's New World Dictionary* 459 (2d Coll. Ed. 1972). We therefore hold that the Commission was authorized to appoint Mr. Coley as Special Counsel for the proceeding. In any event, we cannot perceive how Respondent could have been prejudiced by the *manner* in which Special Counsel's services were obtained.

Respondent next challenges the sufficiency of the evidence to support the Commission's Findings Nos. 10(a), 10(b) and 10(c). He asks us to substitute our independent evaluation of the evidence and to disregard the findings and conclusions of the Commission. He further submits that the evidence as to each charge does not meet the required quantum of proof.

It is well settled that the recommendations of the Judicial Standards Commission "are not binding upon the Supreme Court, and this Court must consider all the evidence and exercise its independent judgment as to whether it should censure, remove, or decline to do either." *In re Martin*, 295 N.C. 291, 245 S.E. 2d 766 (1978). The quantum of proof necessary to sustain censure or removal under the statutes is "proof by clear and convincing evidence - a burden greater than that of proof by a preponderance of the evidence and less than that of proof beyond a reasonable doubt." *In re Nowell*, 293 N.C. 235, 247, 237 S.E. 2d 246, 254 (1977).

With these rules in mind, we now turn to a consideration of the evidence adduced in support of each of the Commission's findings.

[3] Finding of Fact 10(c), which supports the conclusion and recommendation of censure, is supported by clear and convincing evidence in the record. The evidence is undisputed that Respondent was charged with failure to stop at a stop sign; that he was to appear at Catawba District Court at a session over which he was scheduled to preside; that he knew it would be improper to preside over that

session; that he said nothing when his case was called; that he did not offer to recuse himself; that the assistant district attorney, Mr. Tom Hannah, upon learning that Respondent was the defendant, took a voluntary dismissal in the case. Upon this finding, the Commission concluded that Respondent's conduct constituted "conduct prejudicial to the administration of justice that brings the judicial office into disrepute . . . ." Without reaching the question of whether Respondent's conduct, in light of his previous censure by this Court, *In re Martin, supra,* amounts to wilful misconduct in office, we adopt the Commission's finding as our own and hold only that the conduct warrants that Respondent be censured.

[4] Finding of Fact 10(a) and 10(b) deal with Respondent's behavior toward and with two female criminal defendants who had appeared before him. These findings are amply supported by the testimony of the female defendants. The times, places, and bare bones of the facts are further supported by the testimony of Respondent himself; he disagrees for the most part only with the allegations of what transpired between each female defendant and him. He contends that this Court should believe his version of the events, and discount the version related by the female defendants and found as true by the Commission. An independent review of the evidence, however, leads us to agree with the findings and conclusions of the Commission.

The evidence is undisputed that on or about 28 October 1979, Respondent authorized defendant Debbie Lail's release on her own recognizance from Catawba County jail on condition that she appear in court on 30 October 1979. She appeared as required and indicated that she desired to have an attorney represent her. According to Ms. Lail's testimony, during noon recess and while she was on her way home, she noticed a car behind her. The driver was tapping the horn and motioning for her to pull over. Both vehicles then pulled into a church parking lot. Ms. Lail recognized the driver of the other car as Respondent. Respondent discussed her situation with her and then indicated his willingness to appoint an attorney for her. Ms. Lail testified that she told him she appreciated it and that he grinned and said "Well, how much?"

Respondent testified that Ms. Lail initiated the meeting, and that they only discussed briefly her situation. He denied any conduct or statements which could fairly be construed as suggestive.

Again undisputed is the evidence of Ms. Lail's subsequent incarceration for failure to appear in court on 28 December 1979 and Respondent's later reduction of her bond to $500. On 14 January 1980, shortly after Ms. Lail's release from jail, she met with her appointed attorney, Mr. Theodore Cummings, and they arranged for her to call Respondent from Mr. Cummings' office. The phone conversation between Ms. Lail and Respondent was tape recorded. In it Respondent suggested that he and Ms. Lail meet at about 8:30 that night at the Big Rebel parking lot. The contents of the tape were offered and received into evidence at the hearing before the Commission.

When asked at the hearing before the Commission why he had taped the phone conversation, Mr. Cummings replied as follows:

> It was my feeling at the time that there was the possibility of an action such as this coming to pass due to the information that my client had given me. I was concerned not having had any experience with Miss Lail and not actually knowing anything about her, having been appointed by the Court [to] represent her and knowing her personally, that everything she was telling me might not be exactly as it happened. For my own protection, Miss Lail's protection, for Judge Martin's protection I felt it incumbent upon me to as best I could determine that what she was telling me had some basis in fact. I saw no other way to do that other than to verify some of the things that she had told me at a conversation between herself and Judge Martin.

Mr. Cummings and his secretary, Ms. Cynthia Dickson, both testified that, following the telephone call to Respondent, they drove together to the Big Rebel parking lot. Mr. Cummings borrowed a white van from an acquaintance and he and Ms. Dickson positioned themselves so that they could view the cars of Ms. Lail and Respondent. Mr. Cummings testified as follows:

> We could see out the side windows of the van and directly into the 2 front seats of the 2 automobiles parked there.... According to my watch, at 8:24 p.m. she left her automobile and got into his car on the passenger side of the front seat . . . . They appeared to be carrying on a conversation for some 5 minutes. During that period of

In re Martin

> time from 8:24 to 8:29 Judge Martin kept inching closer
> to the seat in which my client was seated .... I saw the
> Judge make an overt effort to get closer to Ms. Lail ....
> His face was close to hers and increasingly closer to hers;
> and at 8:29 his face became very close to her .... [H]e
> grabbed her face, put his left arm around her, and
> appeared to attempt to kiss her .... She was struggling to
> push him away and just flailing at him.

Ms. Dickson's testimony tended to corroborate Mr. Cummings' account of the events and of what appeared to transpire in Respondent's car. Ms. Lail testified to essentially the same transactions and further stated that Respondent tried to kiss her.

Respondent admitted meeting Ms. Lail at the parking lot to discuss her situation but denied making any improper advances. He explained that he "like[s] to look at someone if I am talking to them .... She kept her head down looking outside the car .... I placed one hand on top of her head, one under her chin. I turned her towards me. I said, 'Miss Lail, if you want to talk to me please look at me.'"

While numerous witnesses testified regarding the good character of Respondent, many of those same witnesses attested to the impeccable character of Mr. Cummings. In light of the eyewitness accounts of what appears clearly to be improper advances toward Ms. Lail, we cannot say that the evidence to support finding 10(a) is anything but clear and convincing.

Even if we were to ignore the findings of the Commission and find the facts to be consistent with Respondent's testimony, we are still confronted with the glaring fact that his conduct in conferring alone with Ms. Lail concerning her pending cases violated Canons 2 and 3 of the Code of Judicial Conduct, 283 N.C. 771 (1973). Canon 2 provides that "[a] judge should avoid impropriety and the appearance of impropriety in all his activities;" Canon 3 states that "[a] judge should perform the duties of his office impartially and diligently." The standards set forth in elaboration of Canon 3 state that a judge should "neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." We agree with the Commission's conclusion that Respondent has violated the professional standards prescribed for the judiciary of this State.

Finding of Fact 10(b) relating to Carol Lynn Birchfield is likewise amply supported by the testimony of Ms. Birchfield. Respondent admitted having seen Ms. Birchfield at the Holly Farms Restaurant but denies that he went uninvited to her home later that day. He testified that she announced to him at the restaurant that she had a Doberman dog for sale, and that she gave him her address so that he could "come by to look at it." According to his version, they discussed the possible sale of the dog, and he did go inside the house to see "the room that [had] burned." Douglas F. Powell, an attorney from Morganton who was with Respondent at the Holly Farms Restaurant, testified that he recalled Ms. Birchfield mentioning a dog and "telling Judge Martin where she lived." He further testified that he couldn't recall all that was discussed "because it's been over 3 years ago . . . ."

Ms. Audrey Jenkins, a friend of Ms. Birchfield, testified that Ms. Birchfield called her immediately following the encounter with Respondent and was upset and crying. Ms. Jenkins stated:

> I can't recall the exact words. It's been several years, but she said that Judge Martin had just been there and that he had pushed her down and told her that he would be back and he wouldn't take no for an answer.

Respondent again asks us to ignore the Commission's findings and, in the exercise of our independent judgment, give credibility to his version of the events which transpired at Ms. Birchfield's home. *See In re Martin, supra,* at 308, 245 S.E. 2d at 776. It is true that here we have the testimony of a member of the judiciary pitted against the statements of a former criminal defendant. It is equally true, however, that, in light of the course of conduct witnessed by Mr. Cummings and Ms. Dickson in the Big Rebel parking lot, Ms. Birchfield's version assumes an added layer of credibility. Furthermore, Respondent is the subject of the instant proceeding; his own uncorroborated testiony regarding the visit to Ms. Birchfield's house must, therefore, be regarded to some degree as selfserving. We note in this regard that Mr. Powell's testimony concerning the conversation at Holly Farms does not lend any real weight one way or the other to the events which took place at Ms. Birchfield's house. Although he vaguely recalled a discussion about a dog, and that Ms. Birchfield gave her address to Respondent, such evidence is of little value in determining whether Respondent attempted to force himself upon Ms. Birchfield later in the day. We further take judicial

---
In re Martin
---

notice of the fact that Mr. Powell represented the plaintiff in the case of *Stroupe v. Stroupe*, 301 N.C. 656, 273 S.E. 2d 434 (1980), in which Respondent sitting out of term entered a judgment favorable to the plaintiff and without proper notice to the defendant or his attorney.

Finally, as bearing upon the credibility of Ms. Birchfield's testimony, and despite the Commission's failure to make a finding regarding this witness, we note the testimony of Ms. Marie Mikeal. Ms. Mikeal testified concerning two sexual encounters with Respondent evidencing a course of conduct on his part similar to that followed with Ms. Lail and Ms. Birchfield.

In light of the evidence elicited showing Respondent's course of conduct with Ms. Lail, we hold that Finding of Fact 10(b) is supported by clear and convincing evidence in the record.

We therefore accept and adopt as our own the Commission's Findings 10(a) and 10(b).

**[5]** Even so, Respondent contends that, even if the allegations are true, his conduct did not amount to wilful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. He relies on the following language from *In re Nowell, supra,* at 248, 237 S.E. 2d at 255 (1977):

Wilful misconduct in office is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith . . . . A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith.

Respondent argues that there is no evidence that he intentionally used the *power of his office* to accomplish the acts of which he stands accused. He maintains that nothing in the record and no finding support a conclusion that he ever offered judicial leniency in exchange for sexual favors. He seemingly argues that the conduct here complained of was a matter of his "private" as opposed to his "public" life. We disagree on several grounds.

First, we have consistently and repeatedly held that each of

these cases is to be decided solely on its own facts. The terms "wilful misconduct in office" and "conduct prejudicial to the administration of justice" are "'so multiform as to admit of no precise rules or definition.'" *In re Peoples*, 296 N.C. 109, 157, 250 S.E. 2d 890, 918 (1978). We have defined "wilful misconduct in office" as involving "more than an error of judgment or a mere lack of diligence." *In re Nowell, supra* at 248, 237 S.E. 2d at 255. We have also stated that "[w]hile the term would encompass conduct involving moral turpitude, dishonesty, or corruption, these elements need not necessarily be present." *In re Edens*, 290 N.C. 299, 305, 226 S.E. 2d 5, 9 (1976). As we observed in *In re Martin, supra*, "if a judge *knowingly and wilfully persists in indiscretions and misconduct* which this Court has declared to be, or *which under the circumstances he should know to be*, acts which constitute wilful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, he should be removed from office." *Id.* at 305-306, 245 S.E. 2d at 775. [Emphasis added.] We do not agree, nor have we ever held, that "wilful misconduct in office" is limited to the hours of the day when a judge is actually presiding over court. A judicial official's duty to conduct himself in a manner befitting his professional office does not end at the courthouse door. *See In re Haggerty*, 257 La. 1, 241 So. 2d 469 (1970). Whether the conduct in question can fairly be characterized as "private" or "public" is not the inquiry; the proper focus is on, among other things, the nature and type of conduct, the frequency of occurrences, the impact which knowledge of the conduct would likely have on the prevailing attitudes of the community, and whether the judge acted knowingly or with a reckless disregard for the high standards of the judicial office.

In the instant case, the evidence tends to show, and we have so found, that Respondent pursued a course of conduct which reflects at least a reckless disregard for the standards of his office. The Commission found, and we have adopted those findings, that Respondent attempted on several occasions by innuendoes or directly, to obtain sexual favors from two female defendants. Such conduct, in our view, constitutes "wilful misconduct in office" warranting removal. *See In re Peoples, supra.*

Second, we do not agree that the record is silent on the question of whether Respondent actually offered or extended judicial leniency in return for sexual favors. Ms. Birchfield testified specifi-

---

In re Martin

---

cally that, at Holly Farms Restaurant, Respondent mentioned something about changing her restricted driver's license. This evidence was embodied in the Commission's Finding 10(b). Furthermore, whether or not Ms. Lail ever testified specifically regarding an actual tender of favorable treatment by Respondent, the evidence of the events which transpired between Ms. Lail and Respondent is replete with inferences that he intended some form of exchange of favors. Finally, common sense requires a conclusion that Respondent's conduct constituted an abuse of the powers of his office, regardless of whether he actually extended an offer of judicial favoritism. The women who testified regarding Respondent's unseemly behavior and sexual advances were either criminal defendants, or were otherwise involved in matters pending before him. As such, they were all in particularly vulnerable and susceptible "bargaining" positions, at least from Respondent's point of view. Indeed, without passing on the correctness of the Commission's failure to find facts regarding the incidents, we note that a third female, likewise involved in cases heard or being heard before Respondent, testified concerning encounters she had had with Respondent which were strikingly similar to those of Ms. Lail and Ms. Birchfield. Marie Mikeal testified that on one occasion, Respondent extended to her a "lunch invitation," which ultimately turned out to be an invitation to engage in sexual relations. When asked at the hearing why she had accepted the invitation, Ms. Mikeal gave this poignant and revealing reply:

> Well, there is 2 reasons really that cross my mind of why that I would say, "Yes." One because he was such an important person I felt, and I was just an individual, a common person, and he was such an important person I felt it was an honor, you know, him asking me to lunch; and the second reason, I am kind of scared of anybody that is in the law. I felt like if I said, no, maybe that I'd be crossing him in some way, and he'd be mad at me.

Third, and finally, we disagree with Respondent's contention that his behavior does not constitute "wilful misconduct in office" for yet another reason. Counsel for both parties stipulated for the record the existence of a former case in which this Court censured Respondent. *In re Martin, supra.* We declined to remove Respondent at that time but held nevertheless that his conduct in disposing of several cases *ex parte* constituted "wilful misconduct in office and

conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *Id.* In light of our previous censure of Respondent, and his persistence in following a course of conduct detrimental to the judicial office as evidenced in the instant case, we are left with no conclusion but that Respondent has abused the privilege of his office, is guilty of wilful misconduct in office, and should be officially removed from office. *In re Peoples, supra.*

Respondent next contends that Article 30, Chapter 7A of the General Statutes, establishing a Judicial Standards Commission and providing for removal or censure of a judge, is an unconstitutional denial of due process and equal protection. We do not deem it necessary to discuss the constitutional questions since we have answered them adversely to Respondent in prior cases. *In re Martin, supra; In re Nowell, supra.*

Respondent maintains in his brief that it was error to permit the members of the Commission to read certain statements of witnesses while evidence was being presented at the hearing. The record, however, is totally devoid of any indication that this conduct occurred. There is no objection, no exception, and no assignment of error which could fairly be construed as alluding to this practice. We, therefore, have no grounds upon which to rule, and consequently find this contention wholly without merit.

**[6]** Respondent's final assignment of error is that the Commission erred in considering evidence concerning his conduct with Ms. Birchfield since those acts occurred in previous term. He cites no authority for his contention. The Commission cites two lines of authority, either of which might arguably stand for defendant's proposition, but both of which are distinguishable from the case *sub judice.* Both lines of authority reason that misconduct which occurred during previous terms of office is forgiven by the voice of the electorate in reelecting the official. *E.g., Matter of Carrillo,* 542 S.W. 2d 105 (Texas 1976); *State ex rel. Turner v. Earle,* 295 So. 2d 609 (Fla. 1974). However, the basis for this rationale is further conditioned upon the existence of at least one other factor, depending on the line of authority.

The court in *State ex rel. Turner v. Earle, supra,* held that misconduct occurring during previous terms of office could not form the basis for removal or suspension during a current term when the electorate had, in effect, pardoned the misconduct through

reelection. The court reasoned that the nature of a democracy required that the will of the people prevail. However, the court's holding is based on the failure of the constitution or statute to give "the suspension or removal the effect of disqualifying the suspended or removed person from holding the same or any other office in the future . . . ." *Id.* at 615 [quoting *In re Advisory Opinion to the Governor*, 31 Fla. 1, 12 So. 114 (1893)]. The rationale appears to be that, if the official is free to seek reelection following a removal for misconduct, a reelection which occurs after the misconduct effectively wipes his slate clean and indeed indicates that the electorate still reposes confidence in the official. However, where the constitution or statutes speak otherwise, the people cannot by popular referendum overrule what is undoubtedly the ultimate will of the people as expressed in those enactments. Thus, as the Commission correctly points out, the rationale represented by this line of authority offers no support where, as in this State, the Legislature has made it manifest that "[a] judge removed for other than mental or physical incapacity . . . is disqualified from holding further judicial office." G.S. 7A-376.

The second line of authority, even assuming that we would adopt the rationale that a reelection acts to pardon prior misconduct, is equally inapplicable. *In Matter of Carrillo, supra*, the court held that a reelection of a judicial official may pardon prior acts of misconduct, provided those acts were public knowledge at the time of the reelection. In the case at bar, no evidence is present to indicate that the incident involving Ms. Birchfield was a matter of public knowledge at the time of Respondent's reelection. We therefore hold that the Commission properly considered evidence of events which transpired during Respondent's previous term of office.

Respondent in his brief argues finally that the Commission erred in considering the evidence of Debbie Lail. In support of this assertion, he cites no authority; neither is there an exception or assignment of error relating to his contention. He argues only that the actions of Ms. Lail's attorney, Mr. Cummings, in taping the telephone conversation between Ms. Lail and Respondent constituted trickery and were part of some overall plot or scheme to "get" Respondent. Respondent's contention here is not supported by the record.

As mentioned previously, Mr. Cummings testified that he arranged to tape the phone conversation because he did not know

In re Martin

Ms. Lail well and because he felt that such a permanent recording would best protect all of the persons involved, including Respondent. It was encumbent upon Mr. Cummings, as a member of the legal profession, to refrain from knowingly making false accusations against a judge. DR8-102(B), 283 N.C. 783, 845 (1973). Under the circumstances of this case, we are of the opinion that Mr. Cummings conducted himself professionally and in a manner calculated to preserve the integrity of the judicial system.

Furthermore, the record in this case is devoid of any evidence tending to show a conspiracy or scheme designed to "get" Respondent. The Commission made a specific finding that "the respondent failed to present any evidence at the hearing in support of his allegations [of the existence of a personal vendetta against him]." We agree. When asked the basis of his allegations, Respondent replied, "I feel personally someone has a personal vendetta against me and is out to remove me from office. I do not know why." Respondent also confessed that he did not know who. We therefore find Respondent's final argument to be without merit.

For the reasons stated and in the exercise of our independent judgment of the record, it is ordered by the Supreme Court in conference that Respondent Judge William J. Martin be and he is hereby censured for the conduct specified in the Commission's Finding 10(c).

Be it further ordered by the Supreme Court in conference that Respondent Judge William J. Martin be and he is hereby officially removed from office as a judge in the General Court of Justice, District Court Division, Twenty-Fifth Judicial District, for the wilful misconduct in office specified in the Commission's Findings 10(a) and 10(b).