IN THE SUPREME COURT OF NORTH CAROLINA

No. 242A19

28 February 2020

IN RE INQUIRY CONCERNING A JUDGE, NO. 18-069

MICHAEL A. STONE, Respondent

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered on 3 June 2019 that respondent Michael A. Stone, a Judge of the General Court of Justice, District Court Division 16A,[1] be censured for conduct in violation of Canons 1 and 2A of the North Carolina Code of Judicial Conduct, and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). This matter was calendared for argument in the Supreme Court on 8 January 2020 but was determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 3 of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission.

*No counsel for Judicial Standards Commission or respondent.*

---

[1] Respondent Michael A. Stone is now a Judge of the General Court of Justice, Superior Court Division 19.

ORDER

The issue before the Court is whether Judge Michael A. Stone, respondent, should be censured for violations of Canons 1, 2A, and 2B of the North Carolina Code of Judicial Conduct amounting to conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376(b). Respondent has not challenged the findings of fact made by the Judicial Standards Commission (the Commission) or opposed the Commission's recommendation that he be censured by this Court.

On 24 October 2018, Commission Counsel filed a Statement of Charges against respondent alleging that he had engaged in conduct inappropriate to his judicial office by demonstrating a lack of respect for the office; by inappropriately using judicial letterhead and invoking his judicial title to strongly challenge the jurisdiction of the State Bar over his conduct while he was an attorney in private practice; and by making a number of misleading and grossly negligent assertions regarding his representation of a former client, bringing the judicial office into disrepute. Respondent fully cooperated with the Commission's inquiry into this matter. In the Statement of Charges, Commission Counsel asserted that respondent's actions constituted conduct inappropriate to his judicial office and prejudicial to the administration of justice that brings the judicial office into disrepute or otherwise constituted grounds for disciplinary proceedings under Chapter 7A, Article 30 of the North Carolina General Statutes.

Respondent filed his answer on 11 December 2018. On 30 April 2019, Commission Counsel and respondent entered into a Stipulation and Agreement for Stated Disposition (the Stipulation) containing joint evidentiary, factual, and disciplinary stipulations as permitted by Commission Rule 22 that tended to support a decision to censure respondent. The Stipulation was filed with the Commission on 30 April 2019. The Commission heard this matter on 10 May 2019 and entered its recommendation on 3 June 2019, which contains the following stipulated findings of fact:

> 7. On or about August 21, 2014, Respondent was sworn in as a district court judge for Judicial District 16A, including Anson, Hoke, Richmond, and Scotland Counties. Prior to that time, Respondent was in private practice primarily focused on criminal defense and Department of Social Services work.
>
> 8. On or about May 2, 2017, a "Petition for Resolution of Disputed Fee" was filed against Respondent with the State Bar's "Attorney Client Assistance Program" by Dahndra Moore based upon Respondent's representation of Mr. Moore for several months in 2014 prior to Respondent's appointment to the bench.
>
> 9. In his fee dispute petition, Mr. Moore alleged that Respondent agreed to represent him in a criminal matter for a total fee of $10,000, and that Mr. Moore paid Respondent $5,000 when Respondent withdrew from the representation to accept appointment as a judge. Mr. Moore disputed that Respondent earned the $5,000 he paid Respondent at the time of his withdrawal as counsel.
>
> 10. On or about May 8, 2017, Respondent received a "Notification of Mandatory Fee Dispute Resolution" from the State Bar's Attorney Client Assistance Program. The letter was addressed to "Judge Michael A. Stone" but also noted "Attorney at Law" and

was mailed to Respondent's home address, not a courthouse or business address.

11. When Respondent received notice of the fee dispute in 2017, he did not recognize Mr. Moore's name, had no independent recollection of his representation of Mr. Moore in 2014, and had no files or other documents relating to the representation.

12. At some point thereafter, and to refresh his recollection as to his representation of Mr. Moore, Respondent contacted his former paralegal Sylvia Williams to gain more information about the representation.

13. Ms. Williams reminded Respondent about the circumstances of his representation of Mr. Moore and informed Respondent that she was still in contact with Nina McLaurin, who had made payments to Respondent on Mr. Moore's behalf during the representation. Based upon the information provided to him by Ms. Williams, Respondent asked Ms. Williams to contact Ms. McLaurin to provide a statement to the State Bar indicating that she personally paid for the legal work performed by Respondent and that she was satisfied with the legal representation he provided.

14. On or about June 19, 2017, the State Bar received Respondent's response to the fee dispute.

15. Respondent wrote his response to the State Bar on official court letterhead despite the fact that it addressed Respondent's conduct in his private capacity prior to taking the bench. Respondent's letter also immediately invoked his judicial title to strongly challenge the jurisdiction of the State Bar over his conduct while he was an attorney in private practice. Respondent closed the letter by signing his name, and again invoking his judicial title by including "District Court Judge – District 16A" under his signature.

16. Respondent incorrectly believed it was appropriate to use judicial letterhead and invoke his judicial title in a personal matter because the fee dispute notices from the State Bar were addressed to Respondent

as "Judge Michael A. Stone," and he was responding to the State Bar, a government agency.

17. In Respondent's written response to the State Bar, Respondent also made a number of assertions regarding his representation of Mr. Moore. Respondent acknowledges those assertions were either misleading or made with reckless disregard for the truth because he did not have independent recollection of the details of Mr. Moore's case or records to justify his assertions. Those assertions include the following statements from his response to the State Bar:

a. Respondent informed the State Bar that Mr. Moore was not entitled to any part of the fees paid because they were not paid by him, but by family and friends. In support of this statement, Respondent included a signed statement purportedly from Ms. Nina McLaurin, a friend of Mr. Moore's, stating that she made the majority of the payments towards the legal fees and that she was "very happy with Mr. Stone's legal services" because Respondent "really helped" Mr. Moore. In fact, because Mr. Moore was in jail and unable to make the payments in person, Mr. Moore's family and friends paid the fees on his behalf with funds from Mr. Moore's bank account. In addition, the letter Respondent submitted to the State Bar purportedly from Ms. McLaurin was prepared by Ms. Sylvia Williams, Respondent's former legal assistant. Ms. Williams prepared the statement requested by Respondent, and then forged Ms. McLaurin's signature after being unable to secure the statement from her. Respondent was not aware of, nor responsible for, the forgery.

b. Respondent also asserted to the State Bar that he withdrew from representing Mr. Moore because he had not been paid all of the legal fees due to him. However, Respondent

now acknowledges that he withdrew from Mr. Moore's case because he was appointed to the bench and could no longer serve as counsel regardless of Mr. Moore's ability to pay.

c.  Respondent informed the State Bar that he was unable to produce a copy of his fee agreement with Mr. Moore because he had given it to the court-appointed attorney who took over Mr. Moore's representation after Respondent withdrew, as was his practice as he prepared to wind down his law office. Mr. Moore's new attorney stated that he never received the fee agreement.

d.  As part of the justification of the fees he retained, Respondent asserted to the State Bar that he earned his fees because he "worked very hard in negotiating a plea arrangement" that would have avoided a lengthy prison sentence for Mr. Moore. While there may have been serious discussions with prosecutors about Mr. Moore's case, there was never a plea offer made by the District Attorney's office, which also has no documentation of plea negotiations or plea offers made during Respondent's brief representation of Mr. Moore.

18.  Respondent's response to the State Bar also included a very detailed summary of the work and hours Respondent claimed to have performed in Mr. Moore's case, including *inter alia:*

a.  "5 separate meeting with the District Attorney's office discussing the case and negotiating his case (6½ hours + minimum 6 hours travel time)";

b.  "Meeting with the District Attorney's office about discovery in the case and potential evidentiary issues related to DNA of an aborted fetus from an abortion and legal chain of custody issues as to the evidence, DNA, and

legality of evidence related to the tissue of aborted fetus. (2 Hrs. + 2 Hrs travel)";

c. "Legal Research and case law research related to the unique and novel DNA evidence issues in the case (5 Hrs)"; and

d. "Meeting with my private investigator to go over his report regarding the alleged rape victim and her family as well as travel to try to interview the alleged rape victim and her mother (6 hrs + 2 hours travel)."

19. Respondent knew or should have known that the statements to the State Bar described in paragraph 18 above were misleading, or made with reckless disregard for the truth. Respondent concedes that he based his statements upon his review of the court file because he had an insufficient recollection of the work and no records. The following facts establish that the statements to the State Bar were misleading:

a. Despite Respondent's affirmative assertion to the State Bar that he spent two hours of work plus two hours of travel time to the DA's office to discuss DNA issues and evidence in the case, and despite Respondent's claims that he worked very hard to negotiate a plea deal for Mr. Moore, Respondent admits that he has no specific recollection of the time spent or travel time involved and the Assistant District Attorney who prosecuted Mr. Moore and who handled the DNA issues in Mr. Moore's case never discussed Mr. Moore's charges, the DNA issues, or any plea offer with Respondent in person, by telephone, or via email.

b. Despite Respondent's affirmative assertion to the State Bar that he performed five hours of legal research, Respondent admits that he only recalls this research because it involved a unique DNA issue, and he does not have any specific recollection or documentation of

actual time spent doing the research, and did not document any of his research about the DNA issues in Mr. Moore's case.

    c.    Despite Respondent's affirmative assertion to the State Bar that he spent six hours meeting with his private investigator to go over the investigator's report, the investigator in fact never produced a written investigative report for Respondent's review and does not recall even being paid to do any work in Mr. Moore's case, which Respondent says was not unusual in their working relationship.

20.    On or about July 24, 2017, the Fee Dispute Resolution Program notified Mr. Moore and Respondent that the State Bar's fee dispute facilitator concluded that the parties were unable to reach a voluntary resolution of the fee dispute and therefore the dispute was closed.

21.    After the fee dispute was closed, the State Bar received a letter from Ms. McLaurin, who had learned from Mr. Moore that Respondent had given the State Bar a letter allegedly provided by her. Ms. McLaurin informed the State Bar that she had no knowledge of the statement and that her signature was forged.

22.    Based upon Ms. McLaurin's forgery claim, the State Bar opened a grievance against Respondent, although Respondent asserts that the State Bar did not formally notify him that he was under investigation or why he was under investigation. During the State Bar's investigation, Respondent was interviewed by a State Bar Investigator. During the interview, Respondent reiterated all of the specific assertions as to time worked on Mr. Moore's case made in his June 7, 2017 response letter, and further expressed anger and irritation at being subject to an investigation by the State Bar for his conduct as an attorney, particularly after Respondent believed the matter to have already been concluded.

23.    The State Bar Investigator did not reveal to Respondent that Ms. McLaurin's letter was forged. Respondent remained unaware of the forgery until he

received notice of the Commission's formal investigation into this matter.

24. While Respondent did not intentionally attempt to deceive the State Bar, he acknowledges that his assertions to the State Bar were willful, and that those assertions were either misleading or made with reckless disregard for the truth because he did not have any independent recollection of the details of Mr. Moore's case or records to justify his assertions.

(Citations to pages of the Stipulation omitted.)

Based on these findings of fact, the Commission concluded as a matter of law that:

1. Canon 1 of the Code of Judicial Conduct sets forth the broad principle that "[a] judge should uphold the integrity and independence of the judiciary." To do so, Canon 1 requires that a "judge should participate in establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved."

2. Canon 2 of the Code of Judicial Conduct generally mandates that "[a] judge should avoid impropriety in all the judge's activities." Canon 2A specifies that "[a] judge should respect and comply with the law and should conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2B specifies that a "judge should not lend the prestige of the judge's office to advance the private interest of others . . . ."

3. Respondent concedes that he violated these provisions of the Code of Judicial Conduct.

4. Upon the Commission's independent review of the stipulated facts concerning Respondent's conduct, the Commission concludes that Respondent failed to personally observe appropriate standards of conduct necessary to ensure that the integrity of the judiciary is

preserved, in violation of Canon 1 of the North Carolina Code of Judicial Conduct, and failed to conduct himself in a manner that promotes public confidence in the integrity of the judiciary, in violation of Canon 2A of the North Carolina Code of Judicial Conduct.

5.     The Commission further concludes that the facts establish that Respondent engaged in willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C. Gen. Stat. § 7A-376(b). *See also* Code of Judicial Conduct, Preamble ("[a] violation of this Code of Judicial Conduct may be deemed conduct prejudicial to the administration of justice that brings the judicial office into disrepute, or willful misconduct in office . . .").

6.     The Supreme Court defined conduct prejudicial to the administration of justice in *In re Edens,* 290 N.C. 299 (1976) and stated as follows:

> Conduct prejudicial to the administration of justice that brings the judicial office into disrepute has been defined as "conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to the public esteem for the judicial office." Whether the conduct of a judge may be so characterized "depends not so much upon the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers."

*Id.* at 305-306 (internal citations omitted).

7.     The Supreme Court has defined "willful misconduct in office" as "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally in bad faith. It is more than a mere error of judgement or an act of negligence." *In re Edens.* 290 N.C. 299, 305 (1976). The Supreme Court has also made clear, however, that "willful misconduct in office"

is not limited to conduct undertaken during the discharge of official duties. As stated in *In re Martin,* 302 N.C. 299 (1981):

> We do not agree, nor have we ever held, that "willful misconduct in office" is limited to the hours of the day when a judge is actually presiding over court. A judicial official's duty to conduct himself in a manner befitting his professional office does not end at the courthouse door. Whether the conduct in question can fairly be characterized as "private" or "public" is not the inquiry; the proper focus is on, among other things, the nature and type of conduct, the frequency of occurrences, the impact which knowledge of the conduct would likely have on the prevailing attitudes of the community, and whether the judge acted knowingly or with a reckless disregard for the high standards of the judicial office.

*Id.* at 316 (internal citation omitted).

8. In the present case, Respondent made detailed, affirmative and specific factual assertions to the State Bar during its investigation that Respondent knew were unsupported by any personal recollection or documentation. Respondent also did so while invoking his position as a sitting judge and on letterhead bearing the imprimatur of the North Carolina Judicial Branch. Respondent has also fully admitted that his factual assertions to the State Bar were not only misleading and grossly negligent, but that he knew or should have known that such statements were made with reckless disregard for the truth.

9. The Commission concludes that this course of action amounts to willful misconduct in office and that Respondent willfully engaged in misconduct prejudicial to the administration of justice that brings the judicial office into disrepute.

10.     Respondent also acknowledges that the factual stipulations contained herein are sufficient to prove by clear and convincing evidence that his actions constitute willful misconduct in office and that he willfully engaged in misconduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C. Gen. Stat. § 7A-376.

(Brackets in original and citations to pages of the Stipulation omitted.)

Based on these findings of fact and conclusions of law, the Commission recommended that this Court censure respondent. The Commission based this recommendation on its earlier findings and conclusions, as well as the following additional dispositional determinations:

1.     The Supreme Court in *In re Crutchfield,* 289 N.C. 597 (1975) first addressed sanctions under the Judicial Standards Act and stated that the purpose of judicial discipline proceedings "is not primarily to punish any individual but to maintain due and proper administration of justice in our State's courts, public confidence in its judicial system, and the honor and integrity of its judges." *Id.* at 602.

2.     The Commission recommends censure rather than a more severe sanction based on several considerations. First, the actions identified by the Commission as misconduct by Respondent appear to be isolated and do not form any sort of recurring pattern of misconduct. Second, Respondent has been cooperative with the Commission's investigation, voluntarily providing information about the incident and reaching a resolution through this Stipulation. Third, the Commission has observed that Respondent not only fully and openly admitted his error and expressed genuine remorse, but that he fully understands the negative impact his actions have had on the integrity and impartiality of the judiciary.

3.     The Commission and Respondent acknowledge the ultimate jurisdiction for the discipline of

judges is vested in the North Carolina Supreme Court pursuant to Chapter 7A, Article 30 of the North Carolina General Statutes, which may either accept, reject, or modify any disciplinary recommendation from the Commission.

4. Pursuant to N.C. Gen. Stat. § 7A-377(a5), which requires that at least five members of the Commission concur in a recommendation of public discipline to the Supreme Court, all seven Commission members present at the hearing of this matter concur in this recommendation to **censure Respondent.**

(Citations to pages of the Stipulation omitted.)

"The Supreme Court 'acts as a court of original jurisdiction, rather than in its typical capacity as an appellate court' when reviewing a recommendation from the Commission." *In re Hartsfield*, 365 N.C. 418, 428, 722 S.E.2d 496, 503 (2012) (order) (quoting *In re Badgett*, 362 N.C. 202, 207, 657 S.E.2d 346, 349 (2008) (order)). Neither the Commission's findings of fact nor its conclusions of law are binding on this Court, but we may adopt them. *Id.* (citing *In re Badgett*, 362 N.C. at 206, 657 S.E.2d at 349). If the Commission's findings are adequately supported by clear and convincing evidence, the Court must determine whether those findings support the Commission's conclusions of law. *Id.* at 429, 722 S.E.2d at 503.

The Commission found the stipulated facts to be supported by "clear, cogent and convincing evidence." Respondent entered into the Stipulation agreeing that those facts and information would serve as the evidentiary and factual basis for the Commission's recommendation, and respondent does not contest the findings or conclusions made by the Commission. We agree that the Commission's findings are

supported by clear, cogent, and convincing evidence, and we now adopt them as our own. Furthermore, we agree with the Commission's conclusions that respondent's conduct violates Canons 1, 2A, and 2B of the North Carolina Code of Judicial Conduct, and is prejudicial to the administration of justice, thus bringing the judicial office into disrepute in violation of N.C.G.S. § 7A-376.

This Court is not bound by the recommendations of the Commission. *In re Hartsfield*, 365 N.C. at 429, 722 S.E.2d at 503. Rather, we may exercise our own judgment in arriving at a disciplinary decision in light of respondent's violations of the North Carolina Code of Judicial Conduct. *Id.* Accordingly, "[w]e may adopt the Commission's recommendation, or we may impose a lesser or more severe sanction." *Id.* The Commission recommended that respondent be censured. Respondent does not contest the Commission's findings of fact or conclusions of law and voluntarily entered into the Stipulation with the understanding that the Commission's recommendation would be censure.

We appreciate respondent's cooperation and candor with the Commission throughout these proceedings. Furthermore, we recognize respondent's expressions of remorse and his understanding of the negative impact that his actions have had on the integrity and impartiality of the judiciary. Weighing the severity of respondent's misconduct against his candor and cooperation, we conclude that the Commission's recommended censure is appropriate.

Therefore, the Supreme Court of North Carolina orders that respondent

*Order of the Court*

Michael A. Stone be CENSURED for conduct in violation of Canons 1, 2A, and 2B of the North Carolina Code of Judicial Conduct, and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376.

By order of the Court in Conference, this the 26th day of February, 2020.

s/Davis, J.
For the Court

WITNESS my hand and the seal of the Supreme Court of North Carolina, this the 28th day of February, 2020.

AMY L. FUNDERBURK
Clerk of the Supreme Court

s/M.C. Hackney
Assistant Clerk