IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-54

No. COA21-127

Filed 1 February 2022

Franklin County, 20 CVS 630

IN THE MATTER OF: PATRICIA BURNETTE CHASTAIN

Appeal by Respondent from Order of Removal entered 16 October 2020 by Judge Thomas H. Lock in Franklin County Superior Court. Heard in the Court of Appeals 2 November 2021.

*Zaytoun Ballew & Taylor, PLLC, by Matthew D. Ballew, Clare F. Kurdys, and Robert E. Zaytoun, for Respondent-Appellant.*

*Davis, Sturges & Tomlinson, PLLC, by Conrad B. Sturges, III, for the Petitioner-Appellee.*

DILLON, Judge.

¶ 1    Respondent Patricia Burnette Chastain appeals from an order entered by Judge Thomas H. Lock removing her as the Clerk of Superior Court for Franklin County. Though there was evidence in the record that could support his decision, Judge Lock erroneously based his decision, in part, on acts by Ms. Chastain not alleged in the charging affidavit or which do not rise to the level of misconduct. Accordingly, we vacate Judge Lock's Order and remand for his reconsideration in

accordance with this opinion.

## I. Background

¶ 2        In 2014, Ms. Chastain was elected by the people of Franklin County to serve as their Clerk of Superior Court.  She was reelected to a second term in 2018.

¶ 3        In July 2020, Franklin County attorney Jeffrey Thompson commenced this proceeding seeking the removal of Ms. Chastain as Franklin County's Clerk, pursuant to N.C. Gen. Stat. § 7A-105 (2020), by filing an affidavit alleging that she had committed various acts of willful misconduct.

¶ 4        In October 2020, after a hearing on the matter, Judge Lock entered his Order permanently removing Ms. Chastain as the Franklin County Clerk of Court based on findings that Ms. Chastain had engaged in various acts of misconduct, some of which had not been alleged in Mr. Thompson's affidavit.  Judge Lock ultimately based his decision on "[t]he nature and type of [her] misconduct in office, the frequency of its occurrence, the impact which knowledge of her misconduct would likely have on the prevailing attitudes of the community, and [her] reckless disregard for the high standards of the Office of Clerk of Superior Court[.]"

¶ 5        Ms. Chastain timely appealed Judge Lock's Order.

## II. Analysis

¶ 6        A proceeding regarding the removal of an elected official "is neither a civil nor a criminal action."  *In re Nowell*, 293 N.C. 235, 241, 237 S.E.2d 246, 250 (1977).

Rather, it "is merely an inquiry into the conduct of one exercising [official] power to determine whether [s]he is unfit to hold [her office]. Its aim is not to punish the individual but to maintain the honor and dignity of the [office] and the proper administration of justice." *Id.* at 241, 237 S.E.2d at 250. "Albeit serious," removal from office is "not to be regarded as punishment but as the legal consequence[ ] attached to adjudged [ ] misconduct or unfitness." *Id.* at 241, 237 S.E.2d at 251.

¶ 7     Here, we must determine whether the matter was properly before Judge Lock and whether he followed the law correctly in removing Ms. Chastain.

¶ 8     This matter was brought forth pursuant to Section 7A-105 of our General Statutes, enacted by our General Assembly to provide the procedural mechanism for the removal of the Clerk of Superior Court in a county. Our General Assembly, though, only has the authority to prescribe the procedure and the conditions under which an elected official may be removed, *where such is not otherwise provided for by our Constitution*:

> "[I]t is firmly established that our State Constitution is not a grant of power. All power which is not *expressly limited* by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution [or by the federal constitution]."

*Baker v. Martin*, 330 N.C. 331, 334-37, 410 S.E.2d 887, 888-91 (1991) (considering the authority of our General Assembly to enact legislation requiring any individual

seeking appointment to serve out an unexpired term of an elected judge must be a member of the same political party as the judge being replaced).

¶ 9 We, therefore, must first determine the limitations placed on our General Assembly by our Constitution in prescribing a mechanism for the removal of a county's duly elected Clerk.

## A. Article IV

¶ 10 The Clerk of Superior Court in a county is a constitutional officer, whose office is established by Article IV, section 9(3) of our Constitution. Our Constitution provides two different avenues by which an elected Clerk may be removed. Pertinent to this matter and as more fully examined below, one constitutional avenue allows for a Clerk to be removed from her *current* term of office for mere "misconduct" in office, while the other avenue allows for a Clerk to be *permanently disqualified* from holding office for "corruption or malpractice in [ ] office."

¶ 11 The first constitutional avenue is found in Article IV of our Constitution. Article IV establishes our judicial branch, including the office of Clerk in each county. Section 17 empowers the "senior regular resident Superior Court Judge serving the county" to remove the county's Clerk for "**misconduct** or [for] mental or physical incapacity[.]" N.C. Const. art. IV, § 17(4) (emphasis added).

¶ 12 Significantly, Article IV confers on a single individual, the authority to remove the elected Clerk in a county; namely, the senior regular resident Superior Court

Judge in that same county. Accordingly, no other judge may be conferred with jurisdiction over the subject matter of removing a Clerk for misconduct under Article IV. Indeed, consider that Article IV confers on our Senate only the authority to conduct an impeachment trial for the removal of our Governor. N.C. Const. art. IV, § 4. And it is unquestioned that our General Assembly may not confer on any other body or judge the authority to conduct such *impeachment* trial.

¶ 13        Accordingly, since Judge Lock is not the senior regular resident Superior Court Judge in Franklin County, he lacked any authority to remove Ms. Chastain for mere "misconduct" under Article IV. The only individual currently conferred with this authority under Article IV is Judge John Dunlow, Franklin County's current senior regular resident Superior Court Judge.

¶ 14        It may be that Judge Dunlow has an ethical conflict under our Code of Judicial Conduct to consider Ms. Chastain's removal for misconduct (or incapacity) under Article IV. Indeed, after a hearing on Ms. Chastain's motion to have Judge Dunlow disqualified from hearing the matter, another judge ordered that Judge Dunlow was ethically required to recuse himself based on a letter Judge Dunlow had written which contained "conclusory language regarding" one of the acts of misconduct that Ms. Chastain was alleged to have committed.

¶ 15        However, since our Constitution does not confer subject-matter jurisdiction on anyone else to consider an elected Clerk's removal for misconduct under Article IV,

the Rule of Necessity applies. Under this Rule, a judge may hear a matter, notwithstanding that his participation may violate a judicial ethical canon, where his disqualification "would result in a denial of a litigant's constitutional right to have a question properly presented to such a court." *Lake v. State Health Plan for Teachers & State Emps.*, 376 N.C. 661, 664, 852 S.E.2d 888, 890 (2021).

¶ 16    Our Supreme Court has cited to the Rule of Necessity in holding that a Governor may decide a clemency request though he had previously been involved in the prosecution of the criminal making the request when previously serving as Attorney General. *Bacon v. Lee*, 353 N.C. 696, 717-18, 549 S.E.2d 840, 854-55 (2001) (noting that the Governor is the only individual constitutionally empowered to hear clemency requests). Our Business Court also relied on the Rule of Necessity in considering the propriety of members of a county board of commissioners to sit in judgment of the removal of one of its members, notwithstanding ethical concerns:

> The court cautions that it also has not held that any removal from office would be foreclosed even if bias could be proven in any further proceeding. The court is aware of no authority by which the Board could delegate its decision making by appointing a special committee as might a private corporation. As such, other than a recall election, it is the only body having authority to consider removal. There are cases where courts have upheld even biased *quasi*-judicial decisions when they were made by the only governmental body that had the power to make the finding. They did so employing a doctrine referred to as the "rule of necessity."

*Berger v. New Hanover County Bd. of Comm'rs*, 2013 NCBC 45, ¶74 (2013) (emphasis in original).

The fact that it was Ms. Chastain who sought Judge Dunlow's recusal does not change our analysis concerning Judge Lock's lack of authority to consider her removal under Article IV. As our Supreme Court has stated, "we have never found that a party can waive the fundamental requirement that a court have subject matter jurisdiction." *In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006).

### B. Article VI

Having concluded that the Article IV avenue could not serve as the basis for Judge Lock's decision to remove Ms. Chastain from office, we must consider the other constitutional avenue by which a sitting Clerk may be removed, found in Article VI. Article VI prescribes that certain classes of individuals are *disqualified* from holding *any* office. Relevant to this present case, a Clerk may be removed from her current term *as a consequence of* being disqualified from holding any office under Article VI where she is "adjudged guilty of **corruption** or **malpractice** in any office[.]" N.C. Const. art. VI, § 8 (emphasis added).[1]

---

[1] Other classes of individuals which our Constitution declares to be disqualified from holding office include those "adjudged guilty of [a] felony . . . and who has not been restored to the rights of citizenship[,]" any person "who has been removed by impeachment[,]" any person "not qualified to vote in an election for [the] office[,]" and "any person who shall deny the being of Almighty God." N.C. Const. art. VI, § 8.

Clearly, this Article VI standard is higher than the mere "misconduct" standard found in Article IV. But unlike Article IV, Article VI does *not* specify any procedure or confer authority on any particular judge or body to make disqualification determinations based on acts of corruption or malpractice. Our General Assembly may, therefore, prescribe a procedure. Indeed, well over a century ago, our Supreme Court recognized the inability of a court to declare an individual disqualified from holding office *without legislative authorization* to do so:

> If the courts were authorized by legislative enactment to pronounce in their judgments upon a conviction of [a felony] the disqualification of the defendant for office[,] then the judgments and punishments would be different and there would be much force in the argument, in the absence of any other legislation on the subject. But the courts have no such power. They can only render such judgments as the law annexes to the crimes, and empowers them to pronounce.

*State v. Jones*, 82 N.C. 685, 686 (1880). More recently, in a case involving the removal of an elected judge, our Supreme Court reiterated our General Assembly's authority to prescribe a procedure to disqualify an individual under Article VI:

> We conclude that the [use] of the term "adjudged guilty" [in Article VI] *permits the General Assembly to prescribe proceedings* in addition to criminal trials in which an adjudication of guilt will result in disqualification from office. Pursuant to that authorization, the legislature enacted G.S. 7A-376, barring a judge from future judicial office when he has been removed by this Court for wilful misconduct in office.

*In re Peoples*, 296 N.C. 109, 166, 250 S.E.2d 890, 923 (1978) (emphasis added).

Our General Assembly has enacted Section 7A-105, under which this present matter was brought. We, therefore, turn to its provisions in our evaluation of Judge Lock's Order.

Section 7A-105 states that a Clerk may be (1) "suspended or removed from office" (2) "for willful misconduct or mental or physical incapacity" and (3) that the proceeding "shall be initiated by the filing of a sworn affidavit" and heard "by the senior regular resident superior court judge serving the county of the clerk's residence." N.C. Gen. Stat. § 7A-105.

As we construe Section 7A-105, we are mindful that, while our General Assembly may prescribe a procedure for the disqualification of an elected Clerk under Article VI, our General Assembly may not add conditions which would render a Clerk disqualified from holding office to those already provided for in our Constitution. Indeed, our Constitution states that any "qualified voter in North Carolina who is 21 years of age" is eligible to be elected to any office, "except as in this Constitution disqualified." N.C. Const. art. VI, § 6. And our Supreme Court has instructed that "N.C. Const. art. VI, § 6 does expressly limit disqualifications to office for those who are *elected by the people* to those disqualifications set out in the Constitution." *Baker*, 330 N.C. at 339, 410 S.E.2d at 892 (emphasis added) (stating our General Assembly

may add conditions of disqualifications for those seeking *appointment* to an office).

¶ 23 Also, our General Assembly lacks authority to allow for the imposition of a sanction against a Clerk which is not already provided for under our Constitution. *See Peoples*, 296 N.C. at 161, 250 S.E.2d at 920 (noting "the scope of removal proceedings [under the statute] cannot be broader than the constitutional [provision] which authorized the General Assembly to set up a procedure for removal and censure of judges").

¶ 24 Here, Judge Lock ordered Ms. Chastain "permanently removed" as Clerk. This sanction is certainly within the sanction allowed for in Article VI, as it is akin to being "disqualified." Further, we hold that the sanction in Section 7A-105 that a Clerk may be "removed" includes that a Clerk may be "permanently removed."

¶ 25 We now address whether a judge has authority to permanently remove someone from only the office of Franklin County Clerk, as Judge Lock did here, when acting pursuant to authority granted by Article VI, where Article VI prescribes the sanction of disqualification from holding any office. That is, can our General Assembly prescribe a procedure whereby a judge can order a "lesser-included" sanction to that provided for in our Constitution? Certainly, the disqualification from holding a particular office is a lesser-included sanction than disqualification from holding any office.

¶ 26 We hold that any constitutional authority to sanction an elected Clerk in a

particular way includes the authority to issue a lesser-included sanction. In so holding, we are persuaded by the fact that though Section 17 of Article IV authorizes our General Assembly to establish a procedure for the *censure* or *removal* of judges, our General Assembly has established a procedure whereby our Supreme Court may also "suspend" and "public[ly] reprimand" a judge. N.C. Gen. Stat. § 7A-376. And, our Supreme Court has imposed these lesser sanctions on offending judges pursuant to this statute. *See, e.g., In re Hartsfield*, 365 N.C. 418, 431-32, 722 S.E.2d 496, 505 (imposing a 75-day suspension without pay); *In re Clontz*, 376 N.C. 128, 143, 852 S.E.2d 614, 624 (2020) (issuing a public reprimand).

We next address whether Judge Lock had authority to sanction Ms. Chastain under Article VI for her "misconduct in office[.]" The procedure in Section 7A-105 allows for a Clerk to be removed for "willful misconduct." While Article IV allows for the removal of a Clerk for "misconduct," which certainly includes "willful misconduct," only Judge Dunlow has authority under that Article to remove Ms. Chastain for "misconduct." In any event, the relevant portion of Article VI does not expressly provide for a Clerk's removal for "misconduct" or "willful misconduct," but rather for "corruption or malpractice in any office[.]"

Our Supreme Court, though, has held that, in a case involving egregious conduct, an "adjudication of [a judge's] '*willful* misconduct in office' . . . is equivalent to an adjudication of guilt of 'malpractice in any office' as used in N.C. Const., art. VI,

§ 8[,]" a finding which would disqualify the judge from holding any office in the future. *Peoples*, 296 N.C. at 166, 250 S.E.2d at 923. It is unclear, however, if our Supreme Court intended to suggest in *Peoples* that *every* act of "willful misconduct" rises to the level of "corruption or malpractice" to warrant disqualification under Article VI.

¶ 29 We do hold that acts of misconduct which do not rise to the level of willful misconduct do not equate to "corruption or malpractice" under Article IV. In any event, we note that under our case law and the plain language of our Constitution, not all "misconduct" is deemed to be willful. We do note that our Supreme Court has stated that "persist[ent]" acts of "misconduct" may rise to the level of "wilful misconduct." *In re Martin*, 302 N.C. 299, 316, 275 S.E.2d 412, 421 (1981).

¶ 30 Our Supreme Court has held in the context of a criminal statute that "willfully" means "something more than an intention to commit the offense. It implies committing the offense purposely and designedly in violation of law." *State v. Stephenson*, 218 N.C. 258, 264, 10 S.E.2d 819, 823 (1940). In the same vein, in the context of a proceeding to discipline a judge, our Supreme Court

> ha[s] defined "wilful misconduct in office" as involving "more than an error of judgment or a mere lack of diligence." We have also stated that "[w]hile the term would encompass conduct involving moral turpitude, dishonesty, or corruption, these elements need not necessarily be present." As we observed in *In re Martin, supra*, "if a judge *Knowingly and wilfully persists in indiscretions and misconduct* which this Court has declared to be, or *which under the circumstances he should*

> *know to be*, acts which constitute wilful misconduct in office
> and conduct prejudicial to the administration of justice
> which brings the judicial office into disrepute, he should be
> removed from office."

*In re Martin*, 302 N.C. at 316, 275 S.E.2d at 421 (internal citations omitted) (italics in original).

¶ 31        Neither party cites to any other case defining what constitutes "corruption or malpractice," as used in Article VI. We construe the language to include at a minimum acts of willful misconduct which are egregious in nature, as those in *Peoples*. Further, we construe the language "willful misconduct" in Section 7A-105 in the context of an Article VI hearing to include only those acts of willful misconduct which rise to the level of "corruption or malpractice" in office. Accordingly, Judge Lock lacked authority to rely on any acts of Ms. Chastain that did not rise to this level to support his sanction under Article VI.

## C. Due Process

¶ 32        We next consider the language in Section 7A-105 that the proceeding "shall be initiated by the filing of a sworn affidavit." We note that this procedure was followed, as this proceeding was initiated by the filing of Mr. Thompson's affidavit alleging various acts of misconduct by Ms. Chastain. However, Judge Lock made findings concerning acts that had not been alleged in Mr. Thompson's affidavit and relied on those findings, in part, to support his sanction. Our Supreme Court, though, has held

that any procedure to remove an elected official must afford that official due process. *See In re Spivey*, 345 N.C. 404, 413-14, 480 S.E.2d 693, 698 (1997) (holding that our Constitution does not prohibit our General Assembly from enacting methods for removal "so long as [the officers'] whose removal from office is sought are accorded due process of law"); *see also In re Nowell*, 293 N.C. 235, 241-42, 237 S.E.2d 246, 251 (1977) (holding that "fundamental fairness entitles [the officer] to a hearing which meets the basic requirements of due process"). We hold that Ms. Chastain has the due process (and statutory) right to notice of the acts for which her removal was being sought. We, therefore, conclude that Judge Lock's reliance on these acts that were not alleged in Mr. Thompson's affidavit violated Ms. Chastain's due process rights.

¶ 33       We note the appellee's argument that Ms. Chastain "opened the door" to the presentation of other acts. However, to the extent that she opened the door, Judge Lock could only consider those acts to assess Ms. Chastain's credibility, as she had no notice that she would be subject to removal for those acts. (In the same way, a criminal defendant who opens the door to the admission of past criminal acts can only be punished in that trial for the acts for which he was indicted; the past criminal acts may only be used to show the likelihood that he committed the acts for which he was indicted.)

### D. Jurisdiction

¶ 34       Finally, we consider the language in Section 7A-105 that the matter be heard

by the "senior regular resident superior court judge serving the county of the clerk's residence." We hold, though, that Judge Lock's involvement is not necessarily fatal. Unlike the provision in Article IV vesting jurisdiction in the senior resident judge to remove a Clerk for "misconduct", we hold the *statutory* requirement found in Section 7A-105 to be *procedural* in nature. Indeed, the statute speaks to the requirement as a matter of "procedure." *Id.* Jurisdiction to consider a matter under Section 7A-105 lies with our Superior Court division generally.

¶ 35     In this case, Judge Dunlow's participation was adjudicated as being in violation of our Code of Judicial Conduct. And though our General Assembly has not expressly prescribed a procedure allowing another judge to substitute for the senior resident judge in a Section 7A-105 matter, our Supreme Court recognizes that *the judiciary* may prescribe a procedure, not inconsistent with our Constitution, to fill in procedural gaps left open by our General Assembly:

> Within the guidelines of our Constitution, the legislature is charged with the responsibility of providing the necessary procedures for the proper commencement of a matter before the courts. Occasionally, however, the prescribed procedures of a statutory scheme fail to embrace the unanticipated and extraordinary proceeding such as that disclosed by the record before us. In similar situations, it has been long held that courts have the inherent power to assume jurisdiction and issue necessary process in order to fulfill their assigned mission of administering justice efficiently and promptly. We believe that this is one of those extraordinary proceedings and that

> our rules of procedure should not be construed so literally
> as to frustrate the administration of justice.

*In re Investigation of Death of Eric Miller*, 357 N.C. 316, 322, 584 S.E.2d 772, 778 (2003). Accordingly, we hold that this matter was properly before Judge Lock.

### III. Conclusion

This matter was properly before Judge Lock to consider whether Ms. Chastain should be removed for "corruption or malpractice" in office under Article VI. However, it is not clear from his Order whether Judge Lock applied the correct standard. That is, it is unclear whether Judge Lock was removing Ms. Chastain for "misconduct" under Article IV, which he lacks the power to do, or whether he was removing Ms. Chastain because he thought her acts rose to the level of "corruption or malpractice in [her] office." Further, Judge Lock erroneously based his sanction of Ms. Chastain, in part, on acts which were not contained in the charging affidavit, in violation of her due process rights. We, therefore, vacate Judge Lock's Order and remand for further proceedings consistent with this opinion.

The subject of any rehearing before Judge Lock is limited to whether the acts alleged in the affidavit before him rose to the level of "corruption or malpractice" in office under Article VI of our Constitution. Any hearing to consider Ms. Chastain's removal from her current term of office for misconduct under Article IV must be before the senior regular resident Superior Court Judge of Franklin County.

VACATED AND REMANDED.

Judges WOOD and GORE concur.